IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| JEAN MYRTIL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 22-cv-2595-MSN-tmp |
| | ) |
| SERRA CHEVROLET, | ) |
| | ) |
| Defendant. | ) |

_____

REPORT AND RECOMMENDATION
_____

Before the court is defendant Serra Chevrolet's Motion to Dismiss, filed on October 4, 2022.[1] (ECF No. 9.) For the reasons below, it is recommended that the Motion to Dismiss be granted in part and denied in part.

## I.  PROPOSED FINDINGS OF FACT

On October 27, 2021, Myrtil filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on his race and national origin, hostile work environment, and retaliation. (ECF No. 9-2 at PageID 32.) On June 15, 2022, the EEOC issued Myrtil a right to sue letter. (ECF No.

_____

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

1-1.) Myrtil filed a *pro se* complaint on September 9, 2022. (ECF No. 1.) On October 4, 2022, Serra Chevrolet moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) Myrtil filed a response on November 11, 2022, and Serra Chevrolet filed a reply on November 16, 2022. (ECF Nos. 15, 17.)

Myrtil brings suit against his former employer, Serra Chevrolet, for employment discrimination in violation of Title VII of the Civil Rights Act of 1964. (ECF No. 1 at PageID 1.) Using a form provided by the Clerk's Office to assist *pro se* litigants asserting employment discrimination claims, Myrtil checked boxes alleging discrimination based on race and national origin and identified the discriminatory conduct as termination and retaliation.[2] (<u>Id.</u> at PageID 3-4.) In the section of his complaint

---

[2] Myrtil does not identify his race in his complaint. However, in the EEOC charge, which is attached to Serra Chevrolet's Motion to Dismiss, Myrtil states, "I am a[] black American Man." (ECF No. 9-2.) When considering whether a complaint is subject to dismissal, the court is generally prohibited from considering materials outside of the pleadings, as doing so can convert the motion to one for summary judgment. <u>Gavitt v. Born</u>, 835 F.3d 623, 640 (6th Cir. 2016); <u>see also Wysocki v. Int'l Bus. Mach. Corp.</u>, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." <u>Gavitt</u>, 835 F.3d at 640; <u>see also Kreipke v. Wayne State Univ.</u>, 807 F.3d 768, 774 (6th Cir. 2015); <u>Bassett v. Nat'l Collegiate Athletic Ass'n</u>, 528 F.3d 426, 430 (6th Cir. 2008). EEOC charge-of-discrimination forms are considered public records for this purpose. <u>Holmes v. Dollar Tree Stores, Inc.</u>, No. 22-02114-MSN-tmp, 2022 WL 4362293, at *4 (W.D.

- 2 -

devoted to the facts of the case, Myrtil wrote the following:

> I have been working at respondent as a sales consultant
> since October 2019, until I was terminated on October
> 11, 2021. My family is from Haiti and I have an accent.
> Since I started working for Respondent, my general
> manager, Jim Pittman (W/A American) has subjected me to
> national origin harassment and hostile work environment
> based on my national origin. On a daily basis Jim would
> call me Jamaica or Ugoslav. Whenever I would try to say
> something or ask him to stop it he would go la la la go
> back to Jamaica. I asked him to stop making this comment
> as I was not a Jamaican even if I was a Jamaican my name
> is Jean Myrtil, but he refused and never stopped. I would
> tell him my name was Jean Myrtil not Jamaica and to stop
> calling me out of my name. He said get the "F" out [of]
> here and go back to wherever you came from. In December
> 2020 around Christmas, Jim Pittman ordered a Jamaican
> shirt and put it on my desk. This was really upsetting
> and humiliating as many time I found trash on my desk
> and he would bring up the shirts often.
>
> On 10/8/21 I had finally had enough and told Pittman
> that if he did not stop calling me Jamaica and making
> other discriminatory comments I was going to report him
> to HR. On 10-11-21 when I got to work Pittman told me
> that I needed to go home and to call him before I
> returned to work the following day. He walked me to my
> car. The following day on 10-12-21 I called Pittman he
> told me that I was terminated. I have been discriminated
> against by Respondent for my perceived national origin
> this discrimination and national origin harassment. My
> race and national origin were a motivating factor in my
> termination.

(Id. at PageID 4-6.) In the present motion, Serra Chevrolet asks

the court to dismiss his race discrimination, national origin

discrimination, and national origin harassment claims. (ECF No. 9

at PageID 20.) They do not challenge plaintiff's Title VII

_____

Tenn. Sept. 2, 2022) (citing Rhea v. Dollar Tree Stores, Inc., 395
F. Supp. 2d 696, 703 (W.D. Tenn. 2005)).

retaliation claim.

## II.  PROPOSED CONCLUSIONS OF LAW

**A.  Legal Standard**

In deciding a Rule 12(b)(6) motion to dismiss, the court views the allegations in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556 U.S. at 677). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). To satisfy this requirement, plaintiffs must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (alteration omitted) (quoting Twombly, 550 U.S. at 555, 557). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers and are thus liberally construed. Williams v. Thomas, No. 16-1330, 2019 WL 1905166, at *1 (W.D. Tenn. Apr. 29, 2019); Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011). Even so, *pro so* litigants must adhere to the Federal Rules of Civil Procedure, see Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), and the court cannot create a claim that has not been spelled out in a pleading. See Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003).

## B.    Title VII Discrimination Claims

"Title VII makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." Grose v. Am. Airlines, Inc., No. 20-cv-02754-JTF-tmp, 2021 WL 1876152, at *7 (W.D. Tenn. Mar. 5, 2021) (quoting Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 561 (6th Cir. 2004)). As a preliminary matter, because this is a motion to dismiss, the McDonnell    Douglas burden-shifting    framework    does    not

apply. <u>Payne v. Lucite Int'l</u>, No. 13-2948, 2014 WL 2826343, at *5 (W.D. Tenn. May 20, 2014), <u>adopted by</u>, 2014 WL 2826343, at *1-3 (W.D. Tenn. June 23, 2014); <u>see also</u> <u>Keys v. Humana, Inc.</u>, 684 F.3d 605, 609 (6th Cir. 2012) (citing <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506, 510 (2002)).

Instead, Myrtil's complaint will survive a motion to dismiss if it can satisfy the general pleading standards under Rule 8(a)(2). <u>See</u> <u>Serrano v. Cintas Corp.</u>, 699 F.3d 884, 897 (6th Cir. 2012). Consequently, the complaint must "'allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference,' that Defendant discriminated against Plaintiff with respect to an adverse employment event." <u>Burse v. Nashville Cmty. Care at Bordeaux</u>, No. 3:17-cv-1117, 2018 WL 2560400, at *5 (M.D. Tenn. June 4, 2018), <u>adopted by</u>, 2018 WL 3157019 (M.D. Tenn. June 28, 2018) (quoting <u>Keys</u>, 684 F.3d at 610). "This standard does not require detailed factual allegations, but a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient." <u>El-Hallani v. Huntington Nat. Bank</u>, 623 F. App'x 730, 735 (6th Cir. 2015) (quoting <u>HDC, LLC v. City of Ann Arbor</u>, 675 F.3d 608, 614 (6th Cir. 2012) (emphasis in original)). The *prima facie* elements for a claim for Title VII discrimination are "'(1) [plaintiff] is

a member of a protected group; (2) [plaintiff] was subjected to an adverse employment decision; (3) [plaintiff] was qualified for the position; and (4) [plaintiff] was replaced by a person outside the protected class, or a similarly situated non-protected employee was treated more favorably.'" Evans v. Walgreen Co., 813 F. Supp. 2d 897, 921 (W.D. Tenn. 2011) (quoting Corell v. CSX Transp., Inc., 378 F. App'x 496, 501 (6th Cir. 2010)). Although a Title VII plaintiff need not establish a *prima facie* case at the motion to dismiss stage, courts often look to the *prima facie* elements when determining whether a Title VII plaintiff has a cognizable claim. See, e.g., Towns v. Memphis/Shelby Cty. Health Dep't, No. 17-cv-02626-SHM-tmp, 2019 WL 639050, at *4 (W.D. Tenn. Jan. 25, 2019); McMahan v. Flour Int'l, No. 3:17-cv-1262, 2018 WL 4491133, at *3 n.3 (M.D. Tenn. Sept. 19, 2018); Thomas v. Aaron's Inc., No. 1:18-cv-441, 2018 WL 3386446, at *2-3 (W.D. Mich. July 12, 2018).

1.    National Origin Discrimination

Serra Chevrolet seeks to dismiss Myrtil's claim that alleges discrimination on the basis of perceived national origin. (ECF No. 9-1 at PageID 26.) They argue that Myrtil "does not actually allege that he was discriminated against on the basis of being Haitian (his alleged national origin), but rather his 'perceived national origin' of Jamaican." (Id. at PageID 27.) According to Serra Chevrolet, discrimination based on perceived national origin is

not a cognizable claim under Title VII as a matter of law. (Id.)

Although the United States Court of Appeals for the Sixth Circuit has not addressed whether discrimination on the basis of perceived national origin is actionable under Title VII, several other circuits have held that it is. EEOC v. MVM, Inc., No. TDC-17-2864, 2018 WL 2197727, at *8 (D. Md. May 14, 2018) (collecting cases). In EEOC v. WC&M Enterprises, Inc., 496 F.3d 393, 402 (5th Cir. 2007), the plaintiff was subjected to a hostile work environment, including being called "Taliban" and "Arab" in a derogatory manner, even though he was, in fact, of Indian origin. The Fifth Circuit held that "a party is able to establish a discrimination claim based on its own national origin even though the discriminatory acts do not identify the victim's actual country of origin." Id. at 401. Likewise, in Jones v. UPS Ground Freight, 683 F.3d 1283, 1299 (11th Cir. 2012), the Eleventh Circuit held that "a harasser's use of epithets associated with a different ethnic or racial minority will not necessarily shield an employer from liability." Id. (citing WC&M Enterprises, Inc., 496 F.3d at 401) (considering derogatory references to the plaintiff as "Indian" even though the plaintiff was not Indian); cf. Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 571 (3d Cir. 2002) (stating that an "employer is still discriminating on the basis of religion even if the applicant he refuses to hire is not in fact a Muslim").

- 8 -

Some district courts have reached the same conclusion. MVM, 2018
WL 2197727, at *9 (collecting cases); see Arsham v. Mayor & City
Council of Baltimore, 85 F. Supp. 3d 841, 844, 849 (D. Md.
2015) (holding individual of Iranian national origin and Persian
ethnicity who was subjected to discrimination even though she was
mistakenly thought to be from the Parsee ethnic group in India
could bring discrimination claim under Title VII); Boutros v. Avis
Rent A Car Sys., LLC, No. 10 C 8196, 2013 WL 3834405, at *7 (N.D.
Ill. July 24, 2013) (rejecting the argument that there was no
discrimination because the plaintiff, who was subjected to anti-
Arab statements, was actually of Assyrian ethnicity); Zayadeen v.
Abbott Molecular, Inc., No. 10 C 4621, 2013 WL 361726, at *8 (N.D.
Ill. Jan. 30, 2013) (holding that a plaintiff subjected to
derogatory comments that he looked and sounded like a character
who is of Kazakhstan national origin could advance a national
origin discrimination claim even though he was, in fact, of
Jordanian national origin). But see Yousif v. Landers McClarty
Olathe KS, LLC, No. 12-2788-CM, 2013 WL 5819703, at *4 (D. Kan.
June 5, 2013) ("perceived" discrimination claims are not
cognizable under Title VII"); but cf. El v. Max Daetwyler Corp.,
No. 3:09-CV-415, 2011 WL 1769805, at *5 (W.D.N.C. May 9,
2011), aff'd, 451 F. App'x 257 (4th Cir. 2011) (holding that Title
VII does not protect against discrimination based on the perception

- 9 -

that someone belongs to a particular religion); Lopez-Galvan v.
Men's Wearhouse, No. 3:06cv537, 2008 WL 2705604, at *7 (W.D.N.C.
Jul. 10, 2008) (holding that "perceived race" is not cognizable
under Title VII).

Perhaps the most comprehensive analysis of the issue of
whether perceived national origin is actionable under Title VII
can be found in the MVM decision. 2018 WL 2197727, at *8-11. In
that case, Judge Theodore D. Chuang of the United States District
Court of Maryland explained that the Fifth Circuit in WC&M and the
Maryland District Court in Arsham had relied on EEOC regulations
and guidance in reaching their decision on the issue. Id. at 9
(citing WC&M Enterprises, Inc., 496 F.3d at 401; Arsham, 85 F.
Supp. 3d at 846). Judge Chuang wrote the following:

> In 1980, the EEOC promulgated a regulation defining
> "national origin," which is still in effect
> today. See 29 C.F.R. § 1606.1. Under that regulation,
> "national origin discrimination" includes, but is not
> limited to, "the denial of equal employment opportunity
> because of an individual's, or his or her ancestor's,
> place of origin; or because an individual has
> the *physical, cultural, or linguistic characteristics of
> a national origin group*." Id. (emphasis added). The EEOC
> also issued guidelines stating:
>
>> In order to have a claim of national origin
>> discrimination under Title VII, it is not
>> necessary to show that the alleged
>> discriminator knew the *particular* national
>> origin group to which the complainant
>> belonged. . . . [I]t is enough to show that
>> the complainant was treated differently
>> because of his or her foreign accent,
>> appearance, or physical characteristics.

- 10 -

Guidelines on Discrimination Because of National Origin,
45 Fed. Reg. 85633 (Dec. 29, 1980). More recently, the
EEOC issued guidance stating that "Title VII prohibits
employer actions that have the purpose or effect of
discriminating against persons because of their real or
perceived national origin." U.S. Equal Emp. Opportunity
Comm'n, *Enforcement Guidance on National Origin
Discrimination* (Nov. 18, 2016),
https://www.eeoc.gov/laws/guidance/upload/national-
origin-guidance.pdf. Thus, the EEOC interprets Title VII
to prohibit discrimination based on perceived national
origin.

Courts may appropriately consider and defer to EEOC
regulations and guidelines in interpreting Title VII.
See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)
(holding that rulings, interpretations, and opinions of
an agency are "not controlling upon the courts by reason
of their authority," but "they do constitute a body of
experience and informed judgment to which courts and
litigants may properly resort for guidance"); Gen. Elec.
Co. v. Gilbert, 429 U.S. 125, 141-42 (1976), overruled
by statute on other grounds (applying Skidmore to EEOC
rules and regulations). The weight given to an agency's
guidance is based on "the thoroughness evident in its
consideration, the validity of its reasoning, its
consistency with earlier and later pronouncements, and
all those factors which give it the power to persuade,
if lacking power to control." Skidmore, 323 U.S. at 140.
Here, the Court finds the EEOC's interpretation
persuasive in part because "the EEOC's Guidelines were
adopted after promulgation of proposed, revised
guidelines and receipt and incorporation of public
comments. Such a process is evidence of the thoroughness
of the EEOC's consideration, and the Commission has not
wavered since in its position." Arsham, 85 F. Supp. 3d
at 847.

Id. at 9. Judge Chuang also found that the EEOC's interpretation

of Title VII is consistent with the language of the statute and

Congress's intent in enacting it. Id. at 10. He wrote:

When an employee is subjected to discrimination on the

- 11 -

basis of "the physical, cultural, or linguistic
characteristics of a national origin group," such as a
foreign accent, it is entirely reasonable to conclude
that the perpetrator of the discrimination is motivated
by the employee's own national origin, even if that
national origin is different from the one perceived by
the perpetrator. For example, if an employer harbors
discriminatory animus against individuals from Pakistan,
if he acts on that animus to mistreat an individual of
Indian national origin who has an accent and appearance
that he perceives to be those of a Pakistani, but in
fact are associated with India, it is reasonable to
conclude that he has discriminated on the basis of the
victim's Indian origin, because the discrimination is,
in fact, triggered by the victim's Indian accent and
physical features. See LaRocca v. Precision Motorcars,
Inc., 45 F. Supp. 2d 762, 769-70 (D. Neb. 1999) (finding
that an Italian American plaintiff who was subjected to
anti-Mexican remarks by a manager who had "ignorantly
used the wrong derogatory ethnic remark" had endured
discrimination based on his Italian national origin
because his "Italian characteristics," including dark
brown skin, were the "foundation" of the discrimination,
such that "he would not have been subject to the alleged
harassment if he had not been of Italian descent").

To conclude otherwise would be to allow discrimination
to go unchecked where the perpetrator is too ignorant
to understand the difference between individuals from
different countries or regions, and to provide causes of
action against only those knowledgeable enough to target
only those from the specific country against which they
harbor discriminatory animus. See Arsham, 85 F. Supp. 3d
at 845 (noting that it is "fundamentally abhorrent" to
shield an employer from liability based on a mistaken
perception of the victim's actual national origin
because the discrimination is "no less injurious to the
employee"). Such a perverse result runs contrary to
Congress's intent in Title VII. See Griggs v. Duke Power
Co., 401 U.S. 424, 429-30 (1971) ("The objective of
Congress in the enactment of Title VII is plain from the
language of the statute. It was to achieve equality of
employment opportunities and remove barriers that have
operated in the past to favor an identifiable group of
white employees over other employees."). Discrimination
where the employer is mistaken in his belief that an

- 12 -

> employee is of a particular national origin is just as
> insidious as discrimination where the employer is
> correct, because the culpability of the employer and the
> hardship suffered by the employee are the same, and the
> employee is adversely impacted by a characteristic that
> Congress has decided should be irrelevant in the
> employment context.

Id. at 10.

To support their position that Title VII does not protect against discrimination based on perceived national origin, Serra Chevrolet cites to several district court cases within the Sixth Circuit. Butler v. Potter, 345 F. Supp. 2d 844, 850 (E.D. Tenn. 2004); Benitez v. Tyson Fresh Meats, Inc., No. 3:18-cv-00491, 2022 WL 1283087, at *36 n.76 (M.D. Tenn. Apr. 28, 2022); Burrage v. FedEx Freight, Inc., No. 4:10CV2755, 2012 WL 1068794, at *5 (N.D. Ohio Mar. 29, 2012). Serra Chevrolet cites these cases for the general proposition that Title VII does not protect people who are _perceived_ to belong to any protected class because the statute does not include the word "perceived." See Butler, 345 F. Supp. 2d at 850; Benitez, 2022 WL 1283087, at 36 n.76; Burrage, 2012 WL 1068794, at *5; see also Yousif, 2013 WL 5819703, at *4; El, 2011 WL 1769805, at *5; Lopez-Galvan, 2008 WL 2705604, at *7. However, these cases do not acknowledge the EEOC guidelines on national origin or address the problems that arise from requiring a perpetrator of discrimination to correctly identify a victim's country of origin. Instead, these courts have reasoned that

"Congress has shown, through the Rehabilitation Act and the Americans with Disabilities Act, that it knows how to enact legislation that protects persons who are wrongly perceived to be in a protected class." Butler, 345 F. Supp. 2d at 850. But as was noted in MVM:

> Title VII was enacted long before the ADA, such that by the time the ADA was enacted in 1990, Congress "may not have thought it necessary to revise Title VII to conform with the wording of the ADA if it was aware of the EEOC's published 'Guidance on Discrimination Because of National Origin,'" which had already been issued. Arsham, 85 F. Supp. 3d at 846. In fact, the Court finds it most plausible that because Congress was legislating against the backdrop of Title VII and the EEOC guidance, it simply decided to make explicit in the ADA what the EEOC had clarified in the Title VII context.

The undersigned is persuaded by the well-reasoned analysis set forth in MVM and agrees with the courts that have concluded that Title VII permits claims of discrimination based on perceived national origin.[3]

Serra Chevrolet also argues that Myrtil's allegations are insufficient to state a claim because he has not demonstrated that he meets the *prima facie* elements of a national origin discrimination claim. However, as stated above, a Title VII plaintiff need not establish a *prima facie* case at the motion to

---

[3]The undersigned does not reach the broader question of whether discrimination claims based on the perception that an individual belongs to the other protected classes (race, color, religion, and sex) are actionable.

dismiss stage. See, e.g., Towns, 2019 WL 639050, at *4. Since not all employment discrimination claims would require stating a *prima facie* case, such as those involving direct evidence of discrimination, it is incongruous "to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." Smith v. Transportation Employee Leasing, LLC, No. 22-2082-JPM-tmp, 2022 WL 2659334, at *3 (W.D. Tenn. Jun. 16, 2022) (citing Swierkiewicz, 534 U.S. at 510). Direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. McGee v. Food Warming Equip., Inc., No. 3-14-cv-01776, 2017 WL 587856, at *2 (M.D. Tenn. Feb. 14, 2017). Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor. EEOC v. Publix Super Markets, Inc., 481 F. Supp. 3d 684, 697 (M.D. Tenn. 2020). Direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group. Id. at 697-98.

Taking all facts in Myrtil's complaint as true, the undersigned finds that he has alleged a plausible claim of national

- 15 -

origin discrimination. Myrtil is Haitian and has an accent. (ECF No. 1 at PageID 4.) On a daily basis, Myrtil's manager would call him Jamaica. (Id. at PageID 5.) Whenever Mytril would ask him to stop calling him Jamaica, his manager would say "la la la go back to Jamaica" and refused to stop. On one occasion, his manager also told him to "get the 'F' out [of] here and go back to wherever you come from." (Id.) On another, his manager placed a Jamaican shirt on his desk, which upset and humiliated Myrtil. (Id.) Myrtil was terminated shortly after telling his manager that he would report him to human resources if he continued to make discriminatory comments. (Id. at 5-6.) Myrtil allegations, if true, could constitute direct evidence of discrimination based on his perceived national origin. See Publix Super Markets, 481 F. Supp. 3d at 697. Therefore, it is recommended that the Motion to Dismiss as to Myrtil's national origin discrimination claim be denied.

2.    Race Discrimination

Serra Chevrolet also moves to dismiss Myrtil's race discrimination claim because he failed to articulate a *prima facie* case under Title VII. (ECF No. 9-1 at PageID 25.) Once again, to survive a motion to dismiss, it is not necessary for Myrtil to establish a *prima facie* case. See, e.g., Towns, 2019 WL 639050, at *4. However, Myrtil's bald assertion that he was terminated based on his race is not enough to state a plausible claim of race

discrimination in conformity with the pleading requirements of Rule 8. Myrtil has not alleged any facts indicating that unlawful race discrimination was the reason for his termination; therefore, the undersigned recommends that the Motion to Dismiss Myrtil's race discrimination claim be granted.

## C.    Title VII Hostile Work Environment Claim

Serra Chevrolet also moves to dismiss Myrtil's hostile work environment claim based on his national origin. (ECF No. 9-1 at PageID 28.) They again argue that claims based on perceived national origin are not cognizable under Title VII. As stated above, the undersigned disagrees. (See supra Section B(1).) Serra Chevrolet also asserts Myrtil has failed to plead any facts that show the alleged harassment "was sufficiently severe or pervasive to affect any term, condition, or privilege of employment and create an abusive working environment." (Id.)

The prima facie elements of a hostile work environment claim are: (1) plaintiffs were members of a protected class; (2) they were subjected to unwelcome harassment; (3) the harassment was based on plaintiffs' protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective or preventative actions. Michael v. Caterpillar Fin. Serv. Corp., 496 F.3d 584, 600 (6th Cir. 2007). Although a

plaintiff must eventually prove all of these elements, they do not have the initial burden of establishing a *prima facie* hostile work environment claim to survive a motion to dismiss. See <u>Swierkiewicz</u>, 534 U.S. at 512. Instead, the complaint need only allege "sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that the plaintiff was subject to a hostile work environment. <u>Keys</u>, 684 F.3d at 610 (6th Cir. 2012) (quoting <u>Iqbal</u>, 556 U.S. at 678).

To bring a hostile work environment claim, a plaintiff must plead conduct that was sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive. <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993). The "mere utterance of an . . . epithet which engenders offensive feelings in an employee" does not sufficiently affect the conditions of employment to implicate anti-discrimination laws such as Title VII and the ADA. <u>Id.</u>; <u>Coulson v. Goodyear Tire & Rubber Co.</u>, 31 F. App'x 851, 858 (6th Cir. 2002) (applying the <u>Harris</u> standard to a hostile work environment claim under the ADA and noting that "name-calling, alone" does not demonstrate an abusive environment). Rather, anti-discrimination laws come into play when there is a "discriminatorily abusive work environment" that can detract from employees' job performance or keep them from

- 18 -

advancing in their careers. Harris, 510 U.S. at 21 (citations omitted). The Supreme Court has stated that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citation omitted). A "relatively high bar" is required for the discriminatory behavior that constitutes a hostile work environment and "occasional offensive utterances do not rise to the level required to create a hostile work environment." Khalaf v. Ford Motor Co., 973 F.3d 469, 482 (6th Cir. 2020); see also Kelly v. Senior Ctrs., 169 F. App'x 423, 429 (6th Cir. 2006). Suggested factors used to evaluate whether a hostile work environment claim has been alleged include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

Whether Myrtil's claim survives a motion to dismiss is a close question. Myrtil has alleged that the harassment was frequent: his manager called him Jamaica daily. (ECF No 1 at PageId 4-5.) He claims his manager told him to "go back to Jamaica" on several occasions and once told him, "get the 'F' out [of] here and go back to wherever you came from." (Id. at 5.) He also asserts that

- 19 -

his manager put a Jamaican shirt on his desk and would frequently bring it up. (Id.) Myrtil claims he was upset and humiliated by his manager's conduct. (Id.) His work conditions reached a point to where he felt compelled to complain to human resources and shortly thereafter was fired. (Id.) Considering his allegations at the motion to dismiss stage, and acknowledging that plaintiff is proceeding *pro se*, the undersigned finds that Myrtil has alleged sufficient facts to bring a plausible claim for hostile work environment based on his perceived national origin. Therefore, the undersigned recommends that the Motion to Dismiss as to Myrtil's hostile work environment claim be denied.

### III. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the Motion to Dismiss be granted in part and denied in part.

Respectfully submitted,

s/ Tu M. Pham
—————————————————————
TU M. PHAM
Chief United States Magistrate Judge

December 19, 2022
—————————————————————
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S**

OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A
COPY.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R.
72.1(g)(2).  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS
MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER
APPEAL.